

FILED

JUN 0 7 2010

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| SHARI L. NELSON,<br><br>       Plaintiff,<br><br>vs.<br><br>ACE STEEL AND RECYCLYING, INC., a<br>South Dakota Corporation, d/b/a COW<br>COUNTRY EQUIPMENT, INC., a South<br>Dakota Corporation,<br><br>       Defendant. | Civ. 10- **3010**<br><br>**COMPLAINT**<br>**-and-**<br>**REQUEST FOR JURY TRIAL** |

COMES NOW the Plaintiff, Shari L. Nelson, and for her causes of action against the Defendant Ace Steel Recycling, Inc. d/b/a Cow Country Equipment, Inc., hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337 and 1343(a)(4) and 42 U.S.C. §§ 2000e et seq. Plaintiff also invokes this Court's pendent jurisdiction. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ('Title VII'), the South Dakota Human Relations Act of 1972, as amended, SDCL Ch. 20-13, South Dakota Statutory Law, and the common law.

2.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3.

Plaintiff, Shari L. Nelson, is a female citizen of the United States of America and a resident of the City of Mitchell, County of Davison, South Dakota.  Plaintiff was employed by Defendant at all times relevant to this Complaint.

4.

Plaintiff avers on information and belief that Defendant, Ace Steel Recycling, Inc. d/b/a Cow Country Equipment, Inc. is a duly licensed corporation and authorized to conduct business in the State of South Dakota.  Defendant Ace Steel Recycling, Inc. has two locations - one location is in the City of Rapid City, County of Pennington, State of South Dakota, and the other location is in the City of Pierre, County of Hughes, State of South Dakota.  Defendant Ace Steel Recycling, Inc. also does business in the name of Cow Country Equipment, Inc., its subsidiary. At all times relevant hereto, Plaintiff was an employee of Defendant in Rapid City, South Dakota.

5.

Defendant qualifies as an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII in that it engages in an industry affecting commerce and has employed more than the requisite number of persons for the requisite duration under Title VII and SDCL § 20-13-1(7).

**ADMINISTRATIVE PROCEDURES**

6.

Plaintiff timely filed a charge of discrimination against the Defendant with the State of South Dakota Department of Commerce and Regulation, Division of Human Rights on or about

2

November 5, 2009.  The charge was simultaneously filed with the Chicago District Office of the Equal Employment Opportunity Commission ('EEOC') on or about the same date as listed above.

7.

The State of South Dakota Department of Commerce and Regulation, Division of Human Rights investigated Plaintiff's charge of discrimination and, after doing so, on or about March 8, 2010, made a finding of probable cause to credit Plaintiff's allegations.

8.

On or about March 8, 2010, Plaintiff received from the State of South Dakota Department of Commerce and Regulation, Division of Human Rights notice of its finding of probable cause.

9.

On or about April 26, 2010, Plaintiff received from the EEOC a notice of the right to sue entitling Plaintiff to commence this action within ninety (90) days of receipt of that notice.  The EEOC adopted the findings of the State of South Dakota Department of Commerce and Regulation, Division of Human Rights.

10.

Plaintiff has satisfied all private, administrative and judicial prerequisites to the initiation of this action.

## **FACTUAL ALLEGATIONS**

11.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10 as though set forth fully herein.

3

12.

Plaintiff Shari L. Nelson was employed as a welder by Defendant from on or about February 15, 2009 until on or about May 13, 2009.  Plaintiff was the only female welder and the only female employee employed by Defendant.

13.

Plaintiff's immediate supervisor was Walt Whittemore and he was the only person who reviewed her work.

14.

About two weeks after Plaintiff began her employment with Defendant and throughout the remainder of her employment, Plaintiff was subjected to sexually degrading names, comments and jokes by Whittemore.  Whittemore repeatedly referred to Plaintiff by the name of 'Hooker' and called Plaintiff a 'Pussy' and a 'Baby' throughout her employment.  Whittemore also made derogatory comments and orders to Plaintiff such as telling her that she could 'suck his dick' and 'lick his asshole.'  Such comments were directed at the Plaintiff because of her gender, and were patently offensive and unwelcomed.

15.

Sometime during her employment, a truck driver for Defendant overheard some of Whittemore's degrading comments to Plaintiff and reported Whittemore's behavior to Defendant's owner, Don Huebner.

16.

Huebner met with Plaintiff a few days later and had Plaintiff confirm the truck driver's report, which Plaintiff did.  Huebner assured Plaintiff that he would put a stop to Whittemore's behavior.

4

17.

Unfortunately, the hostile and degrading work environment became much worse for Plaintiff. Plaintiff's co-workers began calling her a "tattletale" and a "baby" and blaming her for almost causing Whittemore to lose his job.

18.

Whittemore ignored Plaintiff and refused to speak to her for about one week after the truck driver's report and Plaintiff's meeting with Huebner.

19.

After about one week, Whittemore resumed calling Plaintiff sexually degrading and offensive names and making derogatory comments, jokes, and orders to her. Whittemore also reported to Huebner that Plaintiff was not performing her job.

20.

Plaintiff reported Whittemore's inappropriate behavior again to Huebner which led to Whittemore apologizing to Plaintiff.

21.

The offensive comments ceased for about two days and then resumed again. Plaintiff's co-workers began calling her a "tattletale" again and Whittemore continued to make vulgar sexual comments to Plaintiff.

22.

Whittemore also refused to show Plaintiff how to perform her job and, instead of showing her what to do, told her to "get the f*#!" away from him.

5

23.

Huebner overheard this altercation between Whittemore and Plaintiff, intervened, and asked Plaintiff if she wanted Whittemore fired.

24.

Knowing that she would only endure further harassment and retaliation from her co-workers if she requested that Whittemore be fired, Plaintiff told Huebner not to fire Whittemore.

25.

As a result of the sexual harassment Plaintiff was subjected to by her direct supervisor, she was constructively discharged from her employment with the Defendant.  She resigned from her employment with the Defendant on or about May 13, 2009.

## STATEMENT OF CLAIMS

### COUNT I
### *Sexual Harassment*

26.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 25 as though set forth fully herein.

27.

Plaintiff was sexually harassed by her supervisor, Walt Whittemore.   The sexual harassment was unsolicited and unwelcomed by Plaintiff.

28.

Plaintiff was forced to work in an atmosphere which was hostile to females generally, and Plaintiff specifically, by virtue of unsolicited and unwelcome verbal conduct of a sexual nature.  This sexual harassment was sufficiently severe and pervasive to alter the conditions of

6

Plaintiff's employment and create a working environment intimidating, insulting and abusive to Plaintiff as a female employee.

29.

Defendant discriminated against Plaintiff because of her sex in violation of § 703(a) of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e-2(a)(1) of Title VII by discriminating against her on the basis of her gender, by engaging in and tolerating or failing to prevent the sexual harassment alleged above and by failing to take affirmative action to correct and redress the aforementioned unlawful employment practices even though Defendant had notice of such actions.

30.

The unlawful employment practices complained of herein were intentional.

31.

Plaintiff has no plain, adequate or complete remedy at law to correct the Defendant's unlawful employment practices, and the injunctive and other equitable relief Plaintiff seeks is her only means of securing full relief from Defendant's unlawful employment practices. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful employment practices.

32.

Defendant is strictly liable to Plaintiff for the sexual harassment resulting in the hostile work environment created by her supervisor, Walt Whittemore.

33.

Plaintiff, as a direct and proximate result of Defendant's conduct, has suffered damages, including, but not limited to, past and future lost wages, anxiety and emotional distress, medical

7

bills, inconvenience, loss of enjoyment of life, pain and suffering and other damages in sums to be proved at trial.

34.

Plaintiff is entitled to recover from the Defendant reasonable attorney's fees as provided in § 706(k) and 42 U.S.C. § 2000e-5(k) of Title VII.

35.

Defendant's actions were done with malice or reckless indifference to Plaintiff's federally protected rights.

36.

Based on Defendant's actions, Plaintiff is entitled to compensatory and punitive damages, together with interest, attorney fees, and costs.

37.

Defendant's conduct as set forth above also constitutes a violation of the South Dakota Human Relations Act of 1972, and Plaintiff is entitled to all remedies therein provided, and any other relief within this Court's pendent jurisdiction.

## COUNT II
### *Constructive Discharge*

38.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 37 as though set forth fully herein.

39.

A truck driver and Plaintiff both complained to Don Huebner on separate occasions of Walt Whittemore's sexual harassment of and inappropriate behavior towards Plaintiff. Huebner also personally witnessed the harassment and inappropriate behavior. The sexually degrading

8

names, comments, orders and mannerisms were conducted by Walt Whittemore, Plaintiffs supervisor.   To Plaintiffs knowledge and belief, Whittemore was never reprimanded for his actions, and remained in a supervisory capacity after her complaints to management.   Defendant failed in its duty to provide a safe work environment for its employees, and failed to take corrective or remedial actions against Whittemore thereby threatening and harming Plaintiff.   As a result of the harassing and hostile work environment, Plaintiff resigned her position on or about May 13, 2009 to escape the harmful and unlawful working conditions at Ace Steel and Recycling, Inc. d/b/a Cow Country Equipment, Inc.

## COUNT III
### *Negligent Hiring*

40.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 39 as though set forth fully herein.

41.

Defendant owed a duty to Plaintiff to provide her with a safe work environment free of harassment from Defendant's management and other employees.

42.

Defendant failed to provide Plaintiff with a safe work environment free of harassment from Defendant's management other employees when they hired Walt Whittemore and made him Plaintiffs supervisor.

43.

Defendant knew or should have known of Whittemore's propensity to harass and/or create a hostile work environment for female employees such as Plaintiff.

9

44.

Defendant's negligent hiring of Whittemore involved an unreasonable risk of causing emotional distress to Plaintiff.

45.

It was reasonably foreseeable that Defendant's placement of Whittemore in a supervisory employment position over Plaintiff would pose a threat of injury to Plaintiff.

46.

Whittemore's harmful conduct of harassing Plaintiff and creating a hostile work environment for her is consistent with his propensity of which Defendant knew or should have known.

47.

Defendant's failure was a direct and proximate cause of the suffered injuries, damages, and losses caused to Plaintiff.

48.

Plaintiff realized actual pain and suffered injuries, damages, and losses as a result.

## COUNT IV
### *Negligent Supervision*

49.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 48 as though set forth fully herein.

50.

Defendant owed a duty to Plaintiff to protect her from Defendant's management and employment staff from harassing her and subjecting her to a hostile work environment.

10

51.

Defendant's negligent supervision of Walt Whittemore involved an unreasonable risk of causing emotional distress to Plaintiff.

52.

Defendant knew or should have known that Whittemore was harassing Plaintiff and/or was creating a hostile work environment for female employees such as Plaintiff and that such behavior would have the propensity to cause injury to Plaintiff.

53.

Defendant failed to protect Plaintiff and provide a safe work environment for her when they, among other things, failed to supervise Whittemore while he was Plaintiff's supervisor, failed to reprimand him and/or remove him from being Plaintiff's direct supervisor when they were informed of his inappropriate behavior towards Plaintiff.

54.

This failure was a direct and proximate cause of the suffered injuries, damages, and losses caused to Plaintiff.

55.

Plaintiff realized actual pain and suffered damages, injuries and losses as a result.

## COUNT V
### *Negligent Retention*

56.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 55 as though set forth fully herein.

57.

Defendant was aware or should have been aware of Whittemore's propensity to harass and/or create a hostile work environment for female employees such as Plaintiff.

58.

Defendant, without exercising due care, employed Whittemore and placed him in a supervisory position over Plaintiff.

59.

Defendant knew or should have known that Whittemore's harassment and/or creation of a hostile work environment for female employees such as Plaintiff would have the propensity to cause injury to Plaintiff.

60.

Defendant failed to take remedial measures after it discovered that Whittemore was harassing Plaintiff and/or creating a hostile work environment for her, such as removing Whittemore from employment with Defendant, to ensure the safety of others, including Plaintiff.

61.

The negligent retention of Whittemore by Defendant was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

62.

Plaintiff in fact suffered actual damages, injuries, and losses as a result.

## COUNT VI
### *Intentional Infliction of Emotional Distress*

63.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 62 as though set forth fully herein.

12

64.

Whittemore intentionally harassed Plaintiff on numerous occasions and/or created a hostile work environment for her. Defendant knew or should have known that such conduct would cause Plaintiff emotional distress.

65.

Whittemore's intentional acts were extreme and outrageous to any reasonable person.

66.

Whittemore's intentional acts, in fact, caused Plaintiff to suffer emotional distress.

## COUNT VII
### *Negligent Infliction of Emotional Distress*

67.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 66 as though set forth fully herein.

68.

Defendant engaged in negligent conduct directed toward Plaintiff when Defendant employed Whittemore, placed him in a supervisory position over Plaintiff and failed to supervise him or take remedial action after being informed of his inappropriate conduct. Defendant's negligent conduct allowed Whittemore to harass Plaintiff and/or create a hostile work environment for her, which caused her injuries and damages.

69.

The Defendant knew or should have known of the probability of inflicting emotional distress upon Plaintiff by providing Whittemore with the ability to harass Plaintiff and/or create a hostile work environment for her and for allowing Whittemore to, indeed, harass Plaintiff and/or create a hostile work environment for her.

13

70.

As a result of the Defendant's conduct, the Plaintiff suffered emotional distress, inconvenience, mental anguish and loss of enjoyment of life manifested by physical injury.

71.

The Defendant's negligent conduct was the proximate cause of the Plaintiff's emotional distress.

## COUNT VIII
### *Punitive Damages*

72.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 71 as though set forth fully herein.

73.

The conduct of Defendant described herein was willful, wanton and oppressive and was intentionally directed at Plaintiff and in reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to an award of punishment damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    Declare that the employment practices complained of in this Complaint are unlawful violations of Title VII and the South Dakota Human Relations Act of 1972, and the common law;

2.    Permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of those statutes and common law;

3.    Order the Defendant to make Plaintiff whole by an award of front pay, back pay and medical expenses, all in amounts to be proved at trial, together with prejudgment interest;

4.    Order that the Defendant pay Plaintiff's compensatory and punitive damages;

14

5.      Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance;

6.      Order the Defendant to pay Plaintiff's costs, expenses, expert fees and reasonable attorney's fees as provided in Title VII in connection with this action; and

7.      Grant such other and further relief to the Plaintiff as is just and equitable.

Dated this 7th day of June, 2010.

**JANKLOW LAW FRIM, PROF. L.L.C.**

**BY** _____
         A.  Russell Janklow
         Kimberly J. Lanham
         1700 West Russell Street
         Sioux Falls, SD 57104
         (605) 338-4304
         Email: russ@janklowlaw.com
                    kim@janklowlaw.com

*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully demands a jury trial on all issues so triable.

_____
A.  Russell Janklow
Kimberly J. Lanham